## T. J. ATWOOD v. G. A. TUCKER, James Reid, and Jos. R. Goyden, Garnishees.

(— L.R.A. (N.S.) —, 145 N. W. 587.)

**Summons — affidavit for publication — residence of defendant — must be stated if known — postoffice address.**

1. An affidavit for publication of summons filed under § 6840, Rev. Codes 1905, requiring the "stating the place of defendant's residence if known to the affiant, and if not known, stating that fact," as a basis for substituted service, is not complied with by filing an affidavit stating "that the last known post-office address of the defendant is unknown."

**Affidavit of publication of summons — statutory requirements — void affidavit.**

2. Such an affidavit for publication is not a substantial compliance with such statutory requirement, and is void.

Garnishee — personal service on — substituted service of summons — void affidavit — judgment — defendant and garnishee — void — jurisdiction — default of garnishee to answer — jurisdiction — garnishee not concluded.

3. Personal service of regular garnishment proceedings upon resident garnishee defendants was had, who defaulted and thereby admitted liability. Subsequently attempted substituted service of summons by publication was had upon a void affidavit for publication. Judgment was entered against both defendant and garnishee by default. *Held:*

(a) Such judgment as to both defendant and garnishees was void as entered without jurisdiction.

(b) Judgment against the garnishee defendants cannot be entered by default until after entry of a valid judgment against the principal defendant, the garnishment proceedings not being an independent action, but wholly ancillary to the main action against the principal defendant.

(c) Garnishee defendants, by defaulting in answer, are not concluded from raising the question of jurisdiction over the principal defendant by motion to vacate the judgment against the principal defendant and themselves for want of jurisdiction.

(d) Such a motion to vacate is a direct, and not a collateral, attack upon the purported judgment.

(e) Default of garnishee defendants cannot clothe the court with jurisdiction in the main action or validate void proceedings taken against the principal defendant, and the proceedings against the garnishees fall with the failure of jurisdiction in the main action against the principal defendant.

Opinion filed January 21, 1914.

From an order of the District Court of Stutsman County, *Coffey,* J., denying an application by garnishee defendants to vacate a judgment taken against them and the principal defendant, for want of jurisdiction in the principal action, garnishee defendants appeal.

Reversed and both principal action and garnishment proceedings ordered dismissed for failure of jurisdiction in the principal action prior to attempted entry of judgment therein.

*Geo. A. Stillman,* for appellants.

The trial court was without jurisdiction to enter the judgment, for want of a sufficient affidavit for service of the summons by publication. The *residence* of the defendant—whether known or otherwise—is not mentioned. The affidavit recites that "the last *known postoffice* address of defendant is *unknown.*" Rev. Codes, 1905 § 6840; Brown,

Jurisdiction, 2d ed. § 51, p. 221; Pomeroy v. Betts, 31 Mo. 419; Lonkey v. Keyes Silver Min. Co. 21 Nev. 312, 17 L.R.A. 351, 31 Pac. 57; New York Baptist Union v. Atwell, 95 Mich. 239, 54 N. W. 760; Fetes v. Volmer, 28 N. Y. S. R. 317, 8 N. Y. Supp. 294; Bothell v. Hoellwarth, 10 S. D. 491, 74 N. Y. 231.

The judgment against the defendant is a nullity. Williams v. Fairmount School Dist. 21 N. D. 198, 129 N. W. 1027.

No judgment can be given or entered against a garnishee until *after* a *valid* judgment is given and entered against the defendant in the main action. 20 Cyc. 978–91, inclusive; 9 Enc. Pl. & Pr. 810; 3 Wade, Attachm. §§ 327, et seq; 2 Sutherland, Code Pl. § 2791; Hinds v. Miller, 52 Miss. 845; Frisk v. Reigelman, 75 Wis. 499, 17 Am. St. Rep. 198, 43 N. W. 1117, 44 N. W. 766; Shoemaker v. Pace, — Tex. Civ. App. —, 41 S. W. 498; St. Louis, I. M. & S. R. Co. v. McDermitt, 91 Ark. 112, 120 S. W. 831; Matheney v. Earl, 75 Ind. 531; Iron Cliffs Co. v. Lahais, 52 Mich. 394, 18 N. W. 121; Streissguth v. Reigelman, 75 Wis. 212, 43 N. W. 1116; State v. Barry, 14 N. D. 316, 103 N. W. 637; Jordan v. Davis, 10 Okla. 329, 61 Pac. 1063; Traders' Mut. L. Ins. Co. v. Humphrey, 207 Ill. 540, 69 N. E. 375.

*Oscar J. Seiler* and *A. W. Aylmer,* for respondent.

The trial court was correct in refusing to set aside the judgment, because the remedy of appellant was by *appeal,* and this appeal is too late. Rood, Garnishment, § 390; Hardin v. Hardin, 26 S. D. 601, 129 N. W. 111; 23 Cyc. 1145.

Defects in proof of service cannot be attacked collaterally. Hanson v. Franklin, 19 N. D. 259, 123 N. W. 386; Ricketson v. Richardson, 26 Cal. 149.

The affidavit for the service of the summons by publication was sufficient. Hanson v. Graham, 82 Cal. 631, 7 L.R.A. 127, 23 Pac. 36.

A person may have a *residence* separate from his *domicil.* Savage v. Scott, 45 Iowa, 130; Hanson v. Graham, supra.

The action in district court was an action *in rem,* and its jurisdiction was complete by reason of the garnishment. Burcell v. Golstein, 23 N. D. 257, 136 N. W. 245; Rood, Garnishment, § 5.

The property or debt garnished has a situs distinct from the debtor's domicil, for the purpose of attachment or garnishment. Harvey v.

Great Northern R. Co. 50 Minn. 405, 17 L.R.A. 84, 52 N. W. 905; Rood, Garnishment, §§ 233, 241; Note to case of Goodwin v. Claytor, 67 L.R.A. 209; Steer v. Dow, 75 N. H. 95, 20 L.R.A.(N.S.) 263, 71 Atl. 217; A. B. Baxter & Co. v. Andrews, 131 Ga. 120, 20 L.R.A. (N.S.) 268, 62 S. E. 42; McShane v. Knox, 103 Minn. 268, 20 L.R.A.(N.S.) 271, 114 N. W. 955; Holford v. Trewella, 36 Wash. 654, 79 Pac. 308.

To say that debts due nonresidents could not be garnished would defeat the statute. Rood, Garnishment, § 384, note 14.

Goss, J. In September, 1908, plaintiff Atwood began an action in district court against defendant Roan, and obtained personal service of a garnishment upon Tucker, Wallis, and Goyden, as garnishee defendants, within Stutsman county. Personal service was not had on defendant Roan, but after service of the garnishee defendants plaintiff filed a defective affidavit for publication of summons reciting "that the last known postoffice address of the above-named defendant, Charles Roan, is unknown," instead of stating "the place of the defendant's residence if known to the affiant, and if not known, stating that fact," as required by § 6840, Rev. Codes 1905. The affidavit omits to state the place of defendant's residence or that his residence was unknown. Instead it does allege that his last known postoffice address is unknown, the equivalent of saying that he does not know what his last postoffice address was. This affidavit was the basis for substituted service by publication of summons. The garnishee defendants defaulted in answering the garnishee summons. Judgment was entered March 2, 1909, against the defendant, Roan, for $289.35 costs and damages upon such substituted service, and judgment was also then taken for said amount against all of the garnishee defendants. On September 23, 1911, the garnishee defendants moved to vacate the judgment taken against the defendant and themselves, basing the motion upon an affidavit reciting the alleged invalidity of the service of summons by publication in the main action, and upon the entire record, contending that the entire proceeding is void as had without jurisdiction of the defendant, Roan, or any subject-matter. This motion was denied by order dated February 3, 1912, and judgment thereon entered reaffirming the judgment sought to be vacated, with added costs taxed in the sum of $15. From

this order and judgment defendant appeals, staying proceedings pending appeal.

Two main question are presented: (1) Is the affidavit for publication of summons a substantial compliance with the requirements of § 6840, or on the contrary is it a nullity; (2) if said affidavit be fatally defective, can the garnishee defendants, in default in answer after personal service had upon them, and who offer no answer or defense on the merits as against the purported judgment taken against them by default, now urge that the judgment taken by the plaintiff against them as garnishee defendants is invalid?

As to the first contention, it is elementary that where constructive service of summons is had, the statute governing it must be strictly complied with. The attack here made on this judgment is direct, and not collateral. Phelps v. McCollam, 10 N. D. 536, 88 N. W. 292, and Freeman v. Wood, 11 N. D. 1, 88 N. W. 721. So we are not confronted with any presumptions applicable as tending to support the validity of a judgment against collateral attack. The affidavit for publication speaks for itself, and it is not contended that there is any presumption that any other affidavit of publication was ever filed. The fact that the plaintiff may have known the place of the defendant's residence and still have been able to truthfully declare on his oath that defendant's "last known postoffice address is unknown" to him, in itself, is enough to condemn the affidavit as invalid as a substantial departure from statutory requirements. An examination of the authorities is conclusive against respondent's contention that the terms "residence" and "postoffice" are interchangeable and synonymous; and that the statutory requirement of a disclosure as to the fact of residence is not complied with by a showing of fact of "last known postoffice address." See the recent cases of Gibson v. Wagner, — Colo. App. —, 136 Pac. 93, and Norris v. Kelsey, 23 Colo. App. 555, 130 Pac. 1088. The Colorado statute required the fact to be stated in the affidavit for publication that the postoffice address was unknown, and the affidavit filed stated the residence as unknown. The judgment entered thereon was held void under collateral attack, following Empire Ranch & Cattle Co. v. Gibson, 23 Colo. App. 344, 129 Pac. 520; Empire Ranch & Cattle Co. v. Howell, 22 Colo. App. 389, 125 Pac. 592; and Empire Ranch & Cattle Co. v. Coldren, 51 Colo. 115, 117 Pac. 1005, and numer-

ous holdings cited in these opinions. See also Ruby v. Pierce, 74 Neb. 754, 104 N. W. 1142, where a return showing "last" usual place of residence was held not to be a compliance with the statutory requirement of service at the usual place of residence, and that the word "last" constituted an added unauthorized qualification to the return of service, and rendered the judgment entered thereon void. See also Wick v. Rea, 54 Wash. 424, 103 Pac. 462; Gilmore v. Lampman, 86 Minn. 493, 91 Am. St. Rep. 376, 90 N. W. 1113, at page 494, where it is also pointed out why the California cases cited by respondent, particularly San Diego Sav. Bank v. Goodsell, 137 Cal. 420, 70 Pac. 300, and Hanson v. Graham, 82 Cal. 631, 7 L.R.A. 127, 23 Pac. 56, decisions under the provisions of §§ 412, 413, of the California Code of Civil Procedure, do not apply under our practice, inasmuch as under the California practice the affidavits and order for publication are not an essential part of the record in the case. Besides, under our practice and statutes no order for the publication is required in obtaining substituted service of summons, since the change made in 1895 from the former practice and statutory procedure requiring such an order. In many jurisdictions an order for publication is a necessary step in constructive service, and decisions are found giving force to the presumption that proper evidence of nonresidence is presumed to have been exhibited, or the order for service by publication could not have been obtained, and judgments void without such a presumption obtaining have been held valid. But no presumption to this effect has ever been indulged in this state, but rather the contrary was the law when an order for publication was essential. Simensen v. Simensen, 13 N. D. 305, 100 N. W. 708, passing on the validity of a judgment entered in 1893. Manifestly, if there be any relaxing of the rule as to essentials, it would be found in such jurisdictions, instead of in those like ours where the affidavit for publication is a necessary part of the record and the contents of which must affirmatively establish the right to proceed further with constructive service. Though it is held in San Diego Sav. Bank v. Goodsell, supra, that the term "address" may be, for the purpose of their procedure, considered as sufficient compliance with the statute requiring the residence of a nonresident defendant to be disclosed to the court, upon an application for an order for service by publication, with direction to be made in such order for mailing of

summons, that holding is not authority to the effect that an affidavit stating, as here, that the "last known postoffice address is unknown," is the equivalent of a statement as required by our statute, that the place of the defendant's residence is unknown. A glance at the many authorities cited under "residence" in vol. 7, Words & Phrases, will disclose that the term "residence" has a definite legal meaning, *i. e.*, as a place of one's abode, dwelling, home, or habitation. Conceding that the term "address" is synonymous with "abode" or "residence," as is intimated in the California case above cited, the qualification wherein defendant swears to his last known postoffice address may or may not in fact be a compliance with the requirements of the statute that the affidavit shall state "the place of defendant's residence if known to the affiant, and if not known, stating that fact," according to whether the postoffice address does or does not properly designate the place of the defendant's residence. For instance, one's residence may be within one state and his postoffice within another, in which case, if the postoffice be taken as his residence, an attachment could not issue or service by publication could not be had, while with the actual place of defendant's residence stated either or both would be available. This is not only possible, but perhaps frequent, as to those domiciled in either state who, reside alongside of or near a boundary line between two states. We cannot hold a postoffice address to have been meant or intended to be synonymous with the mandatory statutory requirement that the place of defendant's residence if known shall be stated, and if not known, that fact shall be stated, all as a basis for further proceedings in obtaining substituted service. For further cases on this subject, see North Star Lumber Co. v. Johnson, 196 Fed. 56, appealed and affirmed in 206 Fed. 624, discussing a similar statute of Oregon in proceedings *in rem* under attachment, although it seems publication is there made upon an order therefor; and Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565. If we depart in one particular from the plain statutory requirement on a matter concededly jurisdictional, under a theory as here advanced of substantial compliance, not only is the rule consonant with all previous decisions on such jurisdictional questions disregarded, that such requirements are to be strictly construed (see Soderberg v. Soderberg, 1 Dak. 503; Whaley v. Carter, 1 Dak. 504; Chamberlain v. Hutchins,

1 Dak. 506; Beach v. Beach, 6 Dak. 371, 43 N. W. 701; Rhode Island Hospital Trust Co. v. Keeney, 1 N. D. 411, 48 N. W. 341; Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095; Birchall v. Griggs, 4 N. D. 305, 50 Am. St. Rep. 654, 6 N. W. 842; Severn v. Giese, 6 N. D. 523, 72 N. W. 922; Simensen v. Simensen, 13 N. D. 305, 100 N. W. 708), but there is imported an element of uncertainty as to jurisdictional requirements in this and kindred proceedings *in rem,* where, if the plain language of the statute be adhered to as the guide, there can be neither uncertainty nor ambiguity.

We conclude that the affidavit for publication was void; that consequently no valid proceedings were thereafter had in the main action against the defendant, and that the only jurisdiction remaining in the court immediately after the filing of this purported affidavit for publication was such as was conferred upon it in a limited sense by the provisional remedy of garnishment and proceedings had thereunder. This takes us to the discussion of the garnishment side of the case.

The second question, as to the right of the garnishee defendants to attack the default judgment, involves a more extended discussion of our statutes and the general law of garnishment. The controlling sections of the statute are § 6972, expressly authorizing the service of a summons by publication upon the defendant where service of garnishee summons has been had; and § 6977, providing that "if any garnishee, having been duly summoned, shall fail to serve his affidavit [of non-liability] . . . the court may render judgment against him for the amount of the judgment which the plaintiff shall recover against the defendant in the action for damages and costs, together with the costs of such garnishee action;" and also § 6982, providing that "the proceedings against a garnishee shall be deemed an action by the plaintiff against the garnishee and defendant as parties defendant," and prescribing the procedure, and that "when the garnishment is not in aid of an execution, no trial shall be had of the garnishee action until the plaintiff shall have judgment in the principal action; . . . and if the defendant has judgment, the garnishee action shall be dismissed with costs. The court shall render such judgment in all cases as shall be just to all the parties and properly protect their respective interests, and may adjudge the recovery of an indebtedness, . . . or personal property disclosed or found to be liable to be applied to the plaintiff's

demands; or . . . when proper, direct . . . any money or other thing paid over or delivered to the clerk or officer. The judgment against a garnishee shall acquit and discharge him from all demands by the defendant or his representative for all money . . . delivered or accounted for by the garnishee by force of such judgment."

These statutes authorize the service by publication of a summons against the principal defendant after the service, as here had, of the garnishee summons and proceedings upon the garnishee defendant, and answer the contention of counsel for the appellant that valid garnishment cannot be had in an action wherein the service of the summons against the principal defendant must be had by publication. It is argued with some force that, inasmuch as the judgment against the garnishee defendant cannot be entered until the entry of judgment in the main action against the defendant, and the court under substituted service, being without jurisdiction of the person of defendant and powerless therefore to enter a personal judgment against him, can enter no valid judgment against the garnishee defendants. Such is not the construction to be placed upon these statutory provisions. The portions of § 6982, authorizing the court to "adjudge the recovery of an indebtedness . . . found to be liable to be applied to plaintiff's demand," plainly have relation to the form of a judgment to be entered under § 6977, and as supplementary to that section; or in other words, it provides that the judgment to be entered in proceedings where substituted service of the defendant is had shall be a judgment *in rem* (Hartzell v. Vigen, 6 N. D. 117, 35 L.R.A. 451, 66 Am. St. Rep. 589, 69 N. W. 203) against the fund to be applied to satisfy the indebtedness found to exist in plaintiff's favor against the principal defendant, and is analogous to similar proceedings under attachment. In either case the property is subjected to the payment of the lien, whether obtained by attachment or garnishment, and the court does not, in a strict sense, render any judgment against the defendant, but merely adjudges the prima facie amount of plaintiff's recovery and subjects the property liened in garnishment or attachment to its payment.

It is here noticeable that this defect, destroying jurisdiction over the *res*, the subject-matter in the main action, and of the power to proceed therein, is one of record. It does not depend upon any question of whether the record as made reflects the truth as to service, but in-

stead it plainly appears from the jurisdictional papers that the affidavit for publication is insufficient to perpetuate the jurisdiction of the court over the *res* already temporarily acquired by garnishment beyond the sixty-day period after such garnishment, and upon the expiration of which period such limited jurisdiction of the court must fall in the absence of personal service in the main action, or of the first publication of a valid substituted service of the summons after the filing of a valid affidavit as a basis therefor. "Such service is a condition precedent to the preservation of such jurisdiction." Rhode Island Hospital Trust Co. v. Keeney, 1 N. D. 411, 48 N. W. 341; Gribbon v. Freel, 93 N. Y. 93. This time limit is prescribed by §§ 6844 and 6850, Rev. Codes 1905. Within sixty days after the garnishment and the jurisdiction thereunder acquired under § 6850, without a valid publication of this summons having been made upon a valid affidavit for publication, all jurisdiction, either of the *res* or of the garnishee defendants, was wholly devested by lapse of time under the provisions of § 6844, Rev. Codes 1905. This must be so unless the proceedings against the garnishee defendants are to be treated as a separate action or proceeding which may legally proceed to judgment independent of the outcome of the principal action. Section 6982 provides that the proceedings against a garnishee shall be deemed an action, and that the garnishee defendant is a party defendant, but also provides that no trial of the garnishee action shall be had until the plaintiff shall have judgment in the principal action. Rights acquired by default of the garnishee defendant must be held in abeyance and be without force upon which to enter a judgment against the garnishee until after the judgment is entered against the principal defendant. Under our statute and under the general law, garnishment proceedings are "purely ancillary to the suit against the principal defendant, dependent upon it for their existence and validity. If for any reason the court fails to get jurisdiction of the principal suit, the garnishment must inevitably fall with it. This principle is universal. It is all the same whether the lapsing came from failure to get personal service of the summons in the principal suit upon the defendant therein in the time and manner prescribed by law, or from failure to comply with the statute directing the mode of obtaining substituted service thereof by publication or otherwise. . . . The garnishee may raise and rely upon the objection [of want of valid

judgment against the principal defendant] at any stage of the proceedings. He does not waive it by answering and going to trial. If judgment has been rendered against the defendant, but is absolutely void, of course, it cannot support the garnishment proceedings, and the garnishee should move the court that he be discharged on that ground. . . . On the other hand, if the court has jurisdiction of the principal suit, the garnishee can inquire no further, for no errors or irregularities therein, not jurisdictional, will in any manner impair the protective force of the garnishment judgment, and beyond this the garnishee has no interest." Rood, Garnishment, §§ 224–226. To the same effect, see Shinn, Attachm. & Garnishment, §§ 707–713. "No valid judgment can be entered against a garnishee until a valid judgment is first entered against the principal defendant. Therefore a judgment against the garnishee entered upon a judgment against the principal defendant which is void will be no protection to the garnishee when he is thereafter sought to be held liable on his indebtedness to the principal defendant." See also Waples, Attachm. & Garnishment, §§ 474–479. "The plaintiff's right of action, the effectiveness of the judgment, and the protection of the garnishee from subsequent attack after payment under judgment, depend upon the principal action, its rightful institution, rightful judgment thereon, and rightful execution of the judgment." And again: "The suit against the garnishee is hypothetical. The right of action depends upon the right of the plaintiff in the main suit. If the plaintiff is the creditor of the principal defendant, and has a right of action against the garnishee, he may step into the shoes of the principal defendant and so become the creditor of the garnishee. In other words, he has no right to recover of the garnishee unless he can show that he ought to be subrogated to the right of the garnishee's creditor, and empowered to sue on that creditor's right. . . . He [garnishee] is held chargeable if the plaintiff should make out his main case. The decree, though literally positive and free from all contingency, is qualified by law so as to render it dependent upon the principal judgment. . . . He is sued by one not a party to the contract by which he became indebted, and is required to perform his contract obligations by violating them; at least, the letter of the contract is disregarded by the law which diverts the payment." See also §§ 545, 546, and 552 of same authority. "Garnishment is in no sense a new suit, but is a special

auxiliary remedy for more effectually reaching defendant's credits, and is always ancillary to the main action under which it is brought." 20 Cyc. 979. In 20 Cyc. 1146, we find: "Where payment is made under a judgment which is void by reason of the court not having jurisdiction of the subject-matter of the parties, such payment is regarded as voluntary, and will not be available to the garnishee as a defense," citing many cases.

But respondent contends that though such defense might have been availed of by the garnishee defendant at any time prior to judgment taken against him, he cannot after entry thereof be heard to urge want of jurisdiction, and that the entry of judgment against him gives rise to a conclusive presumption that a valid judgment has been rendered against the principal defendant in the main action, citing 20 Cyc. 1140; Holbrook v. Evansville R. Co. 114 Ga. 1, 39 S. E. 937; Heffernan v. Grymes, 2 Leigh, 512, cited in Cyc. as supporting its text announcing such to be the general rule. An investigation of these cases discloses that neither sustain the text that a garnishee defendant is concluded by the judgment rendered against him from questioning the validity of the judgment rendered against the principal defendant, if the text has reference to such a proceeding as this, where the judgment against the principal defendant is not a judgment, but is void for want of jurisdiction. The text must be taken as announcing a rule under a judgment where jurisdiction in the principal action was had in the court rendering it. This statement at 20 Cyc. 1140 B, must be considered with 20 Cyc. 1074, subdivs. 2 and 3, and 20 Cyc. 1144, subdivs. 3, b, c, d. The first case above, Holbrook v. Evansville R. Co., was a review of certiorari proceedings on a record in which jurisdiction affirmatively appeared, and an attack on the record disclosing jurisdiction in the main action was made by the garnishee to establish as a fact that service in the main action had never been had, and therefore no jurisdiction existed in the main case, and hence the garnishee judgment was void. And this question of fact of service was actually tried on the garnishee's application in the court entering the judgment, and determined in favor of the fact of service and the validity of the judgment before certiorari was instituted. The holding, then, is in effect simply that the garnishee under those circumstances had his day in court on the very question of fact of whether service had been had,

the basis for jurisdiction, and he was concluded thereby on the facts as disclosed by the record reviewed in certiorari. There is much said in the opinion that would sustain respondent's contention in this case, and that may have caused the unqualified statement in the text in 20 Cyc. at 1140 B. But the decision in the case cited turned on another point entirely. No authorities are cited or reviewed in that case, and the *obiter* is clearly contrary to fundamentals. Likewise, Heffernan v. Grymes, supra, is not authority for the proposition that a garnishee defendant, after judgment against him, cannot question jurisdiction of person or subject-matter in the main action. What is there said under garnishment and attachment is pure *obiter,* as the judgment against the garnishee defendant is in fact reversed on the merits, as was also the finding of the lower court of liability of the absent and default-ing principal defendant to the plaintiff on the merits. However, in this connection, a later case of Central of Georgia R. Co. v. Wright, 5 Ga. App. 514, 63 S. E. 639, squarely supports respondent's contention that this garnishee is estopped by the judgment against him to question jurisdiction in the main suit against the principal defendant. But this case cites no authority. The opinion reasons in a circle, *i. e.,* "while it is true that there must be a valid judgment against this principal debtor . . . before a valid judgment can be rendered against the garnishee, still" because a judgment is rendered against the defendant, the court is presumed to have had before it proof of jurisdiction and proper evidence on which to render it, and the garnishee is concluded. Because a court must have jurisdiction before rendering a valid judg-ment, it is there conclusively presumed that it must have had it be-cause it purported to render a judgment. And this was said in the face of a direct attack on the judgment on grounds of a want of juris-diction by a party who is not protected in payment, but is a volunteer therein, if he pays without the court having actually (not presumptive-ly) had jurisdiction in the principal case. The very statement of the fallacy of such reasoning ought to be sufficient to condemn it. But let us see the possible consequences to this garnishee defendant of announc-ing a rule barring him, upon any mere presumption, from question-ing jurisdiction of the court in the main action under this direct attack on jurisdictional grounds. Should we hold him to be so concluded, he must and does pay the judgment against him. Suppose he removes

to Minnesota or some other state. The defendant there demands payment of this debt still owing to him from the garnishee, unless these garnishment proceedings protect the garnishee defendant against compulsory repayment. Payment is refused. Suit follows. The foreign court examines the record made in this case there offered by this garnishee, there a principal defendant, upon whom there rests the burden of establishing a defense of his payment of a judgment against him taken under valid garnishment proceedings, and the foreign court scans the offered record of this case and discerns at once from the record that no jurisdiction was ever here obtained in the principal action, to proceed by substituted service *in rem* against the fund temporarily liened by garnishment. The sole question always open in a defense or suit upon a foreign judgment is the question of fact, Did the foreign court have jurisdiction? Needless to say the defendant there would not be concluded by these proceedings, void because of want of jurisdiction. Jurisdiction must there appear to have been here had to protect this garnishee, a defendant there. Though by circuitous reasoning, amounting but to judicial fiat, he might be here held concluded to question jurisdiction in this suit, that fact would not avail in such an inquiry there into jurisdiction, with the consequent and inevitable result that he would be called upon by legal proceedings to pay the debt the second time. Such a condition should be avoided, and all that is necessary to obviate it is an application of the usual and elementary rules applying to jurisdiction. The defendant can urge want of jurisdiction of person or subject-matter at any stage of proceedings, and no good reason exists why a garnishee defendant should not be permitted to do likewise. A garnishee defendant has liabilities by contract and operation of law in common with the defendant. He is held to an exercise of good faith toward his defendant in any disclosure he may make under garnishment, and in many courts circumstances may compel him to defend in behalf of the defendant (20 Cyc. 1143), though on this a conflict exists. He is charged to know the record facts concerning jurisdiction in the main action, to enable him to know whether a payment under a purported judgment against himself as a garnishee is a legal payment of the debt of the defendant, or whether it is on the contrary a volunteer payment to a party not in privity of law by judgment with himself and the principal defendant. 20 Cyc. 1146. On the

question of the record concluding an attack for want of jurisdiction, consult Black on Judgments, §§ 275 and 276, holding the better rule to permit even collateral attack on jurisdictional grounds. We quote therefrom: "The pith of the argument extracted from them [cases like those cited by respondent, holding recitations in a record or judgment conclusive upon jurisdiction], and which is truly as applicable to one class of judgments as to the other [having reference to judgments *in personam* and judgments *in rem*], is that to say that the paper relied on is a record because it recites the defendant's appearance, and that he cannot deny the jurisdiction over him because the paper is a record, is reasoning in a vicious circle; and that unless a court has jurisdiction it can never make a record such as to import absolute verity, and the party ought not to be estopped by any allegation in a supposed record from proving any fact which goes to establish the truth of a plea alleging want of jurisdiction." The leading case on this subject is Ferguson v. Crawford, 70 N. Y. 253, 26 Am. Rep. 589. If this is the law as to collateral attack, which question we do not decide, it certainly should be here applied, where the attack as here is direct by motion by a party to the proceedings. On the conclusiveness of this judgment, see § 229, Rood on Garnishment: "The writer has found but few reported cases deciding the question whether the statements contained in the record of the main action are conclusive upon the garnishee. These all seem to have been rendered by courts adopting the doctrine that the record is conclusive. They hold that the garnishee cannot dispute the record of the main action. Whatever may be the law between the parties, or even between one of the parties and a stranger to the suit, the writer is of very firm conviction that this indisputable presumption should never be applied against a garnishee, who, from his position, can never raise the question directly, and whose property may be taken from him upon that judgment, or proceedings ancillary to it, without any assurance of protection from future liability in another state. It is generally admitted that the record of any judgment may be contradicted to show want of jurisdiction, where such judgment was rendered by a court of another state, and this has often been done in garnishment proceedings. Adding to this the well-settled principle that payment of a garnishment judgment rendered by a court having no jurisdiction affords the garnishee no protection, what assurance

has the garnishee that he will not again be required to pay in a suit in another state?" The validity of a garnishment "depends upon the pursuit of the steps prescribed by law for its prosecution, and no aid can be lent to it by the voluntary acts of the garnishee. Like attachment by seizure, its validity depends upon the proper performance of each and every act prescribed by the statute, and without the performance of any one of them the court is without jurisdiction, and the whole proceeding is void and will be reversed on error." If no act of the garnishee can lend validity to the garnishment proceedings, certainly no act of his can indirectly accomplish the same purpose in the proceedings attempted in the main action, when the court is on the face of the record without jurisdiction. Either the judgment in the main action binds both defendant and garnishee, and this independent of any act of the garnishee, whether defaulting or otherwise, or it binds neither defendant nor garnishee, being invalid as to both. It is hard to consistently reason that the garnishee defendant may be bound by his own act in defaulting in answer, and thereby be obligated to pay plaintiff a sum as a debt belonging to the defendant, and at the same time the defendant be not bound for want of jurisdiction, which concededly he may raise at any time. To so hold is to in effect, by legal proceedings, confiscate the property of the garnishee defendants for the benefit of a third party, and to deny to him the command of the statute, § 6982, that the court shall only render such a judgment "as shall be just to all parties, and properly protect their respective interests." It is only a valid judgment entered with jurisdiction and in strict compliance with statutory requirements, that operates to "acquit and discharge him (garnishee) of all demands by the defendant." It is only such a judgment, with plain record proof of jurisdiction, that a foreign jurisdiction will recognize, and the record of the domestic judgment should affirmatively disclose jurisdiction, that a garnishee compelled to pay a debt to another thereunder may exhibit the judgment record with proof of our statutes in the foreign jurisdiction, and be protected there as well as at home. He should not be forced to disgorge on some theory of estoppel against raising jurisdictional defects conceived by the domestic court, which theory the foreign court will not be obliged to respect if it follows the fundamentals governing jurisdiction. We hold the determination as to indebtedness, as well as all

other proceedings had in the main action, were void for want of compliance with statute governing substituted service of summons; that all proceedings had in garnishment were merely ancillary thereto, and had for their source as to authority to enter judgment against the garnishee defendants, the necessity of valid proceedings in the main action, and all fell with the failure of the qualified jurisdiction once obtaining in the main action; and that the garnishee's default in answer in nowise validated the judgment against the principal defendant, which if void rendered the judgment against the garnishees void, and that the garnishee is not estopped by default in answer, to question the conclusiveness, on jurisdictional grounds, of the main judgment.

The order and judgment appealed from is ordered set aside, and all proceedings dismissed as void for want of jurisdiction.

BURKE, J., being disqualified, did not participate.