GULF, C. & S. F. RY. CO. v. WILSHIRE et al.   (No. 8219.)

(Court of Civil Appeals of Texas.   Ft. Worth. June 12, 1915.   Rehearing Denied July 3, 1915.)

1. JUDGMENT ⊛⟿342—VACATION—AUTHORITY AFTER TERM.

A judgment being void, because the case was not regularly before the court, sufficient time not having elapsed after the service, the court could after the term so decree it.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. ⊛⟿342.]

2. JUSTICES OF THE PEACE ⊛⟿127—VACATING JUDGMENT—NEW TRIAL.

A justice having at the term, after that at which he rendered judgment, properly declared it void, because sufficient time had not elapsed after the service, could at such term, then having jurisdiction over the subject-matter and defendant, try the cause and render judgment.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. § 401; Dec. Dig. ⊛⟿127.]

Appeal from District Court, Tarrant County;   J. W. Swayne, Judge.

Suit for injunction by the Gulf, Colorado & Santa Fé Railway Company against J. M. Wilshire and another.   From an adverse judgment, plaintiff appeals.   Affirmed.

Lee & Lomax, of Ft. Worth, and W. H. Smith, for appellant.   Mercer & Wilchar, of Ft. Worth, for appellees.

BUCK, J.   On January 29, 1914, appellee J. M. Wilshire filed suit in a justice court of Tarrant county, Tex., against the Gulf, Colorado & Santa Fé Railway Company for damages in the sum of $18.75, for 17 turkeys alleged to have been killed by appellant's train. Citation was served on the defendant company January 30th, and the February term of court began February 6th.   There was no appearance, or waiver thereof, by defendant, and on February 7th judgment was rendered by default against the defendant for the amount of the claim.   On April 1st the defendant applied to the Seventeenth District Court for a writ of injunction to restrain the justice of the peace and said Wilshire from levying a writ of execution under said alleged void judgment.   Upon the presentation of the petition for injunction, the court entered the following fiat:

"The clerk will issue injunction as prayed for upon defs. giving bond in the sum of $100.   This April 1, 1914.   Jas. W. Swayne, 17th District."

The application seems to have been verified by the affidavit of the railway company's attorney on April 4th, and filed in the district clerk's office April 9th.   Prior to the application, on, to wit, March 9, 1914, the justice of the peace, evidently realizing his mistake in entering the default judgment without the 10 days' requisite service, entered on his docket the following:

"Judgment declared void 3—9—14, by not giving sufficient time to defendant."

Later, the justice, after a vain attempt to get an agreement as to the setting of the case, set the case for trial on June 27th. Whereupon defendant's attorney filed another suit for an injunction on, to wit, June 26th, in the Sixty-Seventh District Court, alleging the absence from Tarrant county of Judge Swayne, the judge of the Seventeenth District Court.   In this petition the history so far of the transaction was recited, including the alleged void action of the justice of the peace in attempting to set aside and declare void the judgment of the February term on, to wit, March 9th.   The judge of the Sixty-Seventh District Court, Judge Marvin H. Brown, granted the writ, making the same returnable before the judge of the Seventeenth District at the July term of that court.   Later these two suits were consolidated.

Lengthy pleadings of both parties are set out in some 40 pages of the transcript, consisting of various charges and counter charges, manifold special exceptions by each to the pleadings of the other, special pleas of various kinds, but we do not deem it necessary to enlarge this opinion by a detailed recital of such pleadings.

On February 13, 1915, long after the grief over the untimely demise of the unfortunate turkeys had been merged into the lust of litigious conflict, and when the accrued costs more than quadrupled the original amount involved, judgment was rendered by the Seventeenth District Court dissolving both injunctions, and the war tax was adjudged against the railway company, and the defeated contestant brings its complaint to this tribunal.   Both litigants have memorialized this court in rather extensive briefs, the worsted adversary even deeming it worth while to file a lengthy reply to the defensive arguments of its opponent.   But we shall try to discuss briefly what we deem the material issues presented by appellant's several assignments.

At the time of the filing of plaintiff's first application for writ of injunction in the Seventeenth District Court, to restrain the levy of the execution writ by the justice court, based on a judgment which the petition alleged to be void, and absolute nullity, it appears that the justice had, in fact, 30 days before, clearly indicated his conclusion that such judgment was void because of in-

sufficient time between service of citation and rendition of judgment. Assuming, for the purpose of this discussion, as legally true plaintiff's averment in his petition that the justice court judgment, rendered on February 7th, was absolutely void, and that it did not bind any one, then the only ground shown in said petition for the injunction sought was that the defendant Wilshire, plaintiff in the justice court, and the justice of the peace were threatening and seeking to enforce such void judgment by the levy of the execution writ. But this allegation, upon which plaintiff founded its right to the restraining order, is absolutely controverted, not only by the testimony of Wilshire, his counsel, and the justice of the peace, but by the entry on the latter's docket of date March 9, 1914. It is evident that no effort was being made by Wilshire or the justice to enforce this judgment at the time when plaintiff applied for this writ.

[1] But appellant urges that the justice of the peace had no authority to enter the order of March 9th, declaring null and void the judgment entered February 7th, and that, therefore, such action by the justice did not affect the apparent validity of the judgment theretofore rendered by him, and that the railway company was entitled to a restraining order. We are of the opinion that any court has the authority, even after term time, to decree void a judgment attempted to be entered at a prior term, but which was void by reason of the case not being regularly before the court.

In Burke v. Mathews, 37 Tex. 74, the Supreme Court says:

"After the close of a term, the power of the court ceases over its own judgments and decrees, except for the correction of clerical errors, mistakes, or defects of form, or some matter necessary to carry out the jurisdiction of the court, or to declare a judgment void rendered in a case not regularly before it."

Black on Judgments, vol. 1, § 306, p. 383, after discussing the subject of the control by the court of its judgments, both during term and after term, says:

"Thus it will be seen that in many of the states there is a strong disposition not to depart widely from the common-law rule on this point. The reasons of the rule are obvious and weighty. The interests of the individual, as well as of the community, demand that there should be a definite end of every litigation; and nothing could be more impolitic than to leave it in the discretion of every court to revise, review, and reconsider its judgments without limit. * * * But we shall find, in the first place, that the rule is almost everywhere subject to certain well-recognized exceptions; as where the judgment in question is entirely void, or was entered without the authority of the court, or is vitiated by some substantial irregularity."

In § 307, Id., it is said:

"It was intimated in the last section that a judgment which is entirely void may always be set aside at a subsequent term. And this is the general doctrine of the cases. Every court possesses inherent power to vacate entries in its record of judgments, decrees, or orders rendered or made without jurisdiction. either during the term at which the entries are made or after its expiration." Citing Ladd v. Mason, 10 Or. 308; Bruce v. Strickland, 47 Ala. 192; Baker v. Barclift, 76 Ala. 414;. In re College Street, 11 R. I. 472.

This question has been passed on by our Supreme Court in numerous instances. See Chambers v. Hodges, 3 Tex. 517; Burr v. Lewis, 6 Tex. 76; Burke v. Mathews, 37 Tex. 73; Heath v. Layne, 62 Tex. 686.

In its second application for writ of injunction the railway company alleged that the justice of the peace was attempting to set down for trial and to have another trial of the cause in controversy, and alleging that under the law said justice of the peace had no power or authority or right to set aside the said judgment after term time, and had no further control of said cause.

If the justice court judgment was void in this case because of the lack of jurisdiction over the person of the defendant railway company, it does not follow that thereby the justice court lost jurisdiction over the subject-matter of the suit, nor that it could not enter a binding judgment at a subsequent term. If appellant's contention is sustainable, this case in the justice court would, because of the mistake made by the justice of the peace in prematurely entering the judgment, be suspended, like Mahomet's casket, in midair, and the owner of the deceased turkeys would be perpetually denied the right of recovery.

[2] But from what has been said above, it is evident that, if the entry of February 7th was a nullity, the justice of the peace had the authority on March 9th to so declare, and had authority at any time during the March term, having at that time jurisdiction over the subject-matter and over the person of the defendant, to try said cause and render a valid judgment; and therefore we conclude that the trial court did not err in dissolving both injunctions and rendering judgment for the defendants in such suits.

The judgment is affirmed.